# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1101 14th Street NW, Suite 400<br>Washington, DC 20005<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES BUREAU<br>OF THE CENSUS<br>4600 Silver Hill Road<br>Suitland, MD 20746<br>Prince George's County<br><br>      Defendant. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This action is brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States Bureau of the Census to produce records responsive to a FOIA request submitted on October 21, 2019. This FOIA request seeks certain records related to the Census Bureau's effort to collect administrative data from state (and possibly local) governments and to use those administrative data to produce statistics on the U.S. citizen voting-age population. Plaintiff Campaign Legal Center seeks declaratory, injunctive, and other appropriate relief to remedy the Census Bureau's failure to comply with the FOIA request.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

3. Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff Campaign

1

Legal Center's claim occurred in this District; Defendant United States Bureau of the Census has its headquarters in the Southern Division of this District; and the requested agency records are situated in this District.

## PARTIES

4. Plaintiff Campaign Legal Center ("CLC" or "Plaintiff") is a nonpartisan, nonprofit legal organization that works to strengthen American democracy at all levels of government. Among other activities, CLC engages in local, state, and federal actions to ensure the political process is accessible to all citizens, resulting in a representative, responsive, and accountable government. As part of these activities, CLC conducts research, publishes reports and articles, submits regulatory comments, and provides expert analysis to the media. CLC is also involved in litigation throughout the country regarding voting rights, campaign finance, redistricting, and electoral ethics. To support these efforts and to educate the public, CLC regularly seeks information under FOIA regarding federal agency decision-making.

5. Defendant United States Bureau of the Census ("Census Bureau," "Bureau" or "Defendant") is a component of the United States Department of Commerce and an "agency" within the meaning of 5 U.S.C. § 552(f). The Census Bureau conducts the constitutionally required decennial census under the supervision of the Secretary of Commerce. *See* U.S. Const. art. I, § 2, cl. 3 (requiring a decennial "actual [e]numeration"); 13 U.S.C. § 141(a) (assigning responsibility for the conduct of the decennial census to the Secretary of Commerce); 13 U.S.C. § 2 (establishing the Census Bureau within the Department of Commerce).

## **STATEMENT OF FACTS**

### **Background**

6.  In 2017, the United States Department of Commerce solicited other federal agencies to submit a formal request to add a question on citizenship status to the 2020 Census questionnaire. In response, the Department of Justice formally requested a citizenship question in December 2017, citing a purported need for more granular citizenship data to enforce Section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301.

7.  Secretary of Commerce Wilbur Ross announced in a March 2018 memorandum that the 2020 Census questionnaire would include a citizenship question. Secretary Ross stated that the purpose of adding the citizenship question was to support enforcement of the VRA.

8.  Three federal district courts subsequently enjoined the addition of the citizenship question to the 2020 Census. In June 2019, the U.S. Supreme Court affirmed one of those injunctions, finding that the VRA rationale was "contrived." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019).

9.  In July 2019, President Donald Trump issued Executive Order 13880 ("E.O. 13880") directing the production of citizenship data through alternative means. E.O. 13880 directs other federal agencies to provide the Commerce Department with administrative records on individuals' citizenship status; orders Secretary Ross to create an inter-agency working group on collecting citizenship data; and orders the Commerce Department to "strengthen its efforts, consistent with law, to obtain State administrative records concerning citizenship." Exec. Order No. 13880, Collecting Information About Citizenship Status in Connection With the Decennial Census, 84 Fed. Reg. 33821, 33822 (July 16, 2019). The executive order states that one rationale for collecting this information is to enable states to "draw districts to equalize voter-eligible

population" in redistricting following the 2020 Census rather than follow the current practice of drawing districts with equal *total* population. *Id*. at 33823-24.

10. Also in July 2019, the Census Bureau disclosed in a regulatory filing that Secretary Ross had "directed the Census Bureau to proceed with the 2020 Census without a citizenship question on the questionnaire, and rather to produce Citizenship Voting Age Population (CVAP) information prior to April 1, 2021 that states may use in redistricting." U.S. Dep't of Commerce, Paperwork Reduction Act Program 2020 Census – Enumeration Operations at 16, OMB Control No. 0607-1006 (July 3, 2019).[1]

11. In furtherance of this directive, the Census Bureau has announced plans to produce CVAP estimates at the census-block level by attempting to impute citizenship status for each person counted in the 2020 Census using administrative records and statistical modeling.

12. On information and belief, the Census Bureau has decided to use administrative records from federal agencies and state governments to help estimate individuals' probability of being U.S. citizens. The Bureau may also use administrative records from local governments for this purpose.

13. To help produce its block-level CVAP estimates, the Census Bureau has expanded its preexisting request for states to provide the Bureau with administrative records. In particular, the Bureau is now seeking administrative records related to state-issued driver licenses and identification cards.

14. In November 2019, the Nebraska Department of Motor Vehicles agreed to share certain records with the Census Bureau, for purposes including the Bureau's production of CVAP estimates.

---

[1] Available at https://www.reginfo.gov/public/do/PRAViewDocument?ref_nbr=201812-0607-003.

15. To date, the Nebraska Department of Motor Vehicles is the only agency of any state that is publicly known to have agreed to share driver-license records with the Census Bureau to facilitate the production of CVAP estimates.

16. State driver-license records often contain out-of-date citizenship information. Specifically, driver-license records often mischaracterize naturalized U.S. citizens as non-U.S. citizens, because the records are not regularly updated to reflect naturalizations of individuals who were non-U.S. citizens when they last interacted with the driver-license agency.

17. CLC is concerned that by relying on state driver-license records and other potentially out-of-date administrative records for citizenship information, the Bureau will underestimate the number of voting-age U.S. citizens residing on certain census blocks. Such errors will adversely affect the political representation of the blocks with underestimated CVAP, if the Bureau's CVAP statistics are used for redistricting.

18. CLC—and the public at large—has only incomplete information about the status of the Bureau's efforts to collect administrative records related to citizenship status and the Bureau's plans for producing CVAP statistics based on administrative records.

19. On information and belief, some state governments are currently considering whether to share driver-license data with the Census Bureau to help the Bureau produce CVAP estimates. The lack of complete information limits the public's ability to engage with state government decision-makers about this important policy choice.

### CLC's FOIA Request

20. On October 21, 2019, CLC submitted the FOIA request at issue in this action ("Request") to the Census Bureau. A true and correct copy of the Request is attached to this Complaint as Exhibit 1.

21. In the Request, Exh. 1 at 1-2, CLC requested four categories of records:

**Item 1**: All written communications, sent or received from June 27, 2019 to the present, between any Census Bureau employee and any employee of a state or local government entity, containing any of the following terms: "citizenship," "citizen," "citizens," "CVAP," "driver," "drivers," "driver's," "motor vehicle," "motor vehicles," "DMV," "DL," "ID," "Driver License Administrative Data," "Identification Cards," "administrative record," "administrative records," "administrative data," "AR," "ARs," "AD," "Ad Rec," "Ad Recs," "AdRec," "AdRecs," "Ad Data," "AdData," "Federal Driver's Privacy Protection Act," "FDPPA," "Systematic Alien Verification for Entitlements Program," or "SAVE."

**Item 2**: All written communications, sent or received from June 27, 2019 to the present, between any Census Bureau employee and any employee of the American Association of Motor Vehicle Administrators.

**Item 3**: From June 27, 2019 to the present, all written agreements or memoranda of understanding between the Census Bureau and any state or local government entity concerning administrative records. This item includes any documents modifying or updating pre-existing agreements or MOUs regarding state or local administrative records.

**Item 4**: All written communications or memoranda, sent or received by Census Bureau employees from June 27, 2019 to the present, containing both (a) the term "citizenship," "citizen," "citizens," or "CVAP," and (b) the term "driver," "drivers," "driver's," "motor vehicle," "motor vehicles," "DMV," "DL," "ID," "Driver License Administrative Data," "Identification Cards," "administrative record," "administrative records," "administrative data," "AR," "ARs," "AD," "Ad Rec," "Ad Recs," "AdRec," "AdRecs," "Ad Data," "AdData," "Federal Driver's Privacy Protection Act," "FDPPA," "Systematic Alien Verification for Entitlements Program," or "SAVE."

22. CLC expressly excluded from the Request all personally identifiable administrative records or data acquired by the Census Bureau, as those records are strictly confidential under federal law. Exh. 1 at 2.

23. The Request instructed the Bureau to search the devices and accounts of "all custodians who are likely to possess documents relating to acquisition of administrative records by the Census Bureau." The Request listed nine such custodians: Steven Dillingham, Ron Jarmin,

6

Enrique Lamas, Albert E. Fontenot Jr., John Abowd, Victoria Velkoff, John Eltinge, Michael Berning, and Kevin Deardorff. The Request further noted that this list of nine custodians is not exhaustive; the Bureau must also search the devices and accounts of "other custodians whose names CLC does not know," insofar as those other custodians are likely to possess records relating to the Bureau's acquisition of administrative records. Exh. 1 at 3.

24. CLC requested expedited processing of the Request because the Request involves both "[a] matter of widespread and exceptional media interest involving questions about the Government's integrity which affect public confidence" and "[a]n urgency to inform the public" about the Bureau's collection of state administrative records on citizenship and its plans to use those records. Exh. 1 at 10-12 (citing 15 C.F.R. § 4.6(f)(1)(iii)-(iv)).

25. CLC also requested that the Census Bureau waive or reduce all fees associated with the Request. Exh. 1 at 5-10.

26. The Census Bureau assigned the Request tracking number DOC-CEN-2020-000115.

27. On November 6, 2019, a representative of the Census Bureau sent an e-mail to CLC, stating that before the Bureau would process the Request, CLC must provide five categories of additional information:

> 1. Names of Census employees you would like researched
> 2. Names of State or local government employees
> 3. Names of American Association of Motor Vehicle Administration employees
> 4. State government agencies
> 5. What type of written agreements?

28. A true and correct copy of the Bureau's November 6, 2019 e-mail to CLC is attached to this Complaint as Exhibit 2.

29.     Molly Danahy, an attorney at CLC, responded to the Bureau by e-mail on November 14, 2019. Ms. Danahy advised the Bureau that CLC believed it had already provided sufficient information to process the request, but that CLC was willing to confer with the Bureau and, to the extent possible, would provide information to help the Bureau design a diligent and efficient search for responsive records. A true and correct copy of the November 14, 2019 e-mail from Ms. Danahy to the Bureau is attached to this Complaint as Exhibit 3.

30.     On November 14, 2019, the Bureau responded by e-mail to Ms. Danahy. The Bureau stated that it would provide a fee estimate to search for and produce items responsive to Items 1 and 4 of the Request, limited to the nine custodians named in the Request. The Bureau stated that it was unable to process the Request with respect to Items 2 and 3: "In regards to Item 2 and 3 [of the Request], we will need names or e-mail address from the American Association of Motor Vehicle Administration and State and Local Government entities. This request is still too broad." A true and correct copy of the November 14, 2019 e-mail from the Bureau to Ms. Danahy is attached to this Complaint as Exhibit 4.

31.     On December 4, 2019, three members of CLC's staff conferred by telephone with Erika Hawkins, a FOIA analyst at the Census Bureau. During this telephone conference, Ms. Hawkins agreed to, *inter alia*, (1) instruct the Census Bureau's information technology department to search the devices and accounts of the nine custodians listed in the Request for records responsive to Items 1 and 4 of the Request; and (2) send task orders to employees of relevant program areas within the Bureau, so that those subject-matter experts could help Ms. Hawkins identify custodians to be searched and search terms to be used, including the names of relevant state and local government entities and American Association of Motor Vehicle Administrators employees.

32.     Ms. Hawkins sent an e-mail to CLC on December 4, 2019, memorializing the telephone conference of the same date. Ms. Danahy responded with a clarifying e-mail on December 10, 2019. A true and correct copy of the December 4, 2019 e-mail from Ms. Hawkins to CLC is attached to this Complaint as Exhibit 5. A true and correct copy of the December 10, 2019 e-mail from Ms. Danahy to Ms. Hawkins is attached to this Complaint as Exhibit 6.

33.     On January 14, 2020, Ms. Danahy sent an e-mail to Ms. Hawkins, noting that the Bureau had not produced any documents, clarified the scope of the documents it planned to produce, or decided on CLC's application for a fee waiver for the Request. Ms. Danahy requested that Ms. Hawkins "promptly issue a determination stating and explaining (1) whether the Bureau will grant CLC's application for a fee waiver, (2) the scope of the documents the Bureau plans to produce and the documents it plans to withhold, and (3) the Bureau's schedule for producing documents to CLC." A true and correct copy of the January 14, 2020 e-mail from Ms. Danahy to Ms. Hawkins is attached to this Complaint as Exhibit 7.

34.     On January 15, 2020, Ms. Hawkins sent an e-mail to Ms. Danahy, stating that CLC's "fee waiver and expedited processing has been granted," and that a letter to that effect would follow by email. A true and correct copy of the January 15, 2020 e-mail from Ms. Hawkins to Ms. Danahy is attached to this Complaint as Exhibit 8.

35.     By letter dated January 16, 2020, the Census Bureau officially granted CLC's application for a fee waiver in connection with the Request. However, the Bureau's letter granting the fee waiver provided no information about the scope of documents the Bureau planned to produce, nor did it provide an anticipated schedule for production. A true and correct copy of the January 16, 2020 letter is attached to this Complaint as Exhibit 9.

36. On February 11, 2020, Ms. Hawkins sent an e-mail to Ms. Danahy regarding the portion of the Request seeking memoranda of understanding between the Census Bureau and state or local government entities. Ms. Hawkins stated: "Part of our process, is to inform and consult with agencies that partnered and/or co-authored documents, reports and contracts with the U.S. Census Bureau. These agencies are allotted time to review and give input on these documents. As soon as the consults have been completed, we will furnish any responsive records, determinations and appeal rights to you." A true and correct copy of the February 11, 2020 e-mail from Ms. Hawkins to Ms. Danahy is attached to this Complaint as Exhibit 10.

37. By letter dated March 2, 2020, Vernon E. Curry, Chief of the Census Bureau's Freedom of Information Act Office, informed Ms. Danahy that the Bureau had published documents responsive to Item 3 of the Request on its website, and that the Bureau would continue to publish additional documents responsive to Item 3 "on a rolling basis." Mr. Curry further stated: "Regarding Items 1, 2, and 4 of your request, we will provide responses to you on a rolling basis as well as any appeal rights you may have." A true and correct copy of the March 2, 2020 letter from Mr. Curry to Ms. Danahy is attached to this Complaint as Exhibit 11.

38. To date, the Census Bureau has not produced any documents to CLC pursuant to Items 1, 2, and 4 of the Request.

39. The Census Bureau has not notified CLC of the Bureau's determination on whether, or to what extent, it will produce documents pursuant to Items 1, 2, and 4 of the Request. Although Mr. Curry stated that the Bureau would "provide responses to [CLC] on a rolling basis" regarding Items 1, 2, and 4, Exh. 11 at 2, the Bureau has not informed CLC whether these "responses" will consist of document productions, withholdings, or some combination of both. Nor has the Bureau

notified CLC of the expected timeline for any production of documents pursuant to Items 1, 2, and 4.

40. To the extent the Bureau may have impliedly or constructively denied Item 1, 2, or 4 of the Request in whole or in part, the Bureau has not notified CLC of any reason for such denial.

## CAUSES OF ACTION

### Count I
### Violation of the Freedom of Information Act by Failure to Make a Timely Determination and Notification as to Items 1, 2, and 4 of the Request

41. CLC repeats and realleges paragraphs 1 through 40.

42. CLC properly requested records within the possession, custody, and control of the Census Bureau.

43. The Census Bureau is an agency subject to FOIA.

44. FOIA generally mandates that within 20 working days of receiving a FOIA request, the Census Bureau must determine whether, or to what extent, it will comply with the request, and must "notify the person making [the] request of such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i). In certain unusual circumstances, the Census Bureau may take up to 30 working days to make the required determination and notification. 5 U.S.C. § 552(a)(6)(B)(i).

45. The Census Bureau failed to make a determination on Items 1, 2, and 4 of the Request, and notify CLC of such determination and the reasons therefor, within either 20 or 30 working days. The Bureau is therefore in violation of the statutory deadline to make a determination on the Request.

### Count II
### Violation of the Freedom of Information Act by Failure to Produce Responsive Documents as to Items 1, 2, and 4 of the Request

46. CLC repeats and realleges paragraphs 1 through 45.

47. FOIA requires the Census Bureau to make reasonable efforts to locate records responsive to a FOIA request, release any non-exempt responsive records it locates, and provide a lawful reason for withholding any responsive materials.

48. The Census Bureau has failed to conduct an adequate search and produce all non-exempt records responsive to Items 1, 2, and 4 of the Request, in violation of FOIA. 5 U.S.C. § 552(a)(3)(A).

49. Because the applicable time limit for the Census Bureau to provide a determination, notification, and statement of reasons as to Items 1, 2, and 4 of the Request has expired, CLC has exhausted its administrative remedies with respect to the Census Bureau's failure to produce all non-exempt responsive documents. 5 U.S.C. § 552(a)(6)(C)(i).

50. CLC is entitled to injunctive relief requiring the Census Bureau to disclose the documents requested in Items 1, 2, and 4 of the Request. *See* 5 U.S.C. § 552(a)(4)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that the Census Bureau is in violation of FOIA;

2. Order the Census Bureau to conduct a reasonable search for records responsive to Items 1, 2, and 4 of the Request on an expedited basis;

3. Order the Census Bureau to disclose all responsive records not exempt from disclosure;

4. Order the Census Bureau to produce a *Vaughn* index for all responsive documents it claims are exempted from disclosure;

5. Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

6. Grant such other relief as the Court deems just and proper.

Dated: March 6, 2020

By: ___/s/ Molly Danahy_____

**CAMPAIGN LEGAL CENTER**
Molly Danahy (D. Md. Bar No. 21266)
Danielle Lang*
Jeffrey Zalesin*
1101 14th Street NW, Suite 400
Washington, DC 20005
mdanahy@campaignlegalcenter.org
dlang@campaignlegalcenter.org
rgreenwood@campaignlegalcenter.org
jzalesin@campaignlegalcenter.org
Tel.: (202) 736-2200
Fax: (202) 736-2222

Ruth Greenwood*
125 Cambridgepark Drive
Cambridge, MA 02140
rgreenwood@campaignlegalcenter.org
Tel.: (202) 560-0590
Fax: (202) 736-2222

*Motions for admission *pro hac vice* forthcoming.